**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 4, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

KENNETH DEAN STURM,

        Defendant - Appellant.

----------------------------------------------------

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

v.

CHRISTOPHER ADAM DAYTON,

        Defendant - Appellant.

|

No. 09-1386
(D.C. No. 1:06-CR-00342-LTB-1)
(D. Colo.)

No. 09-5022
(D.C. No. 4:07-CR-00076-TCK-1)
(N.D. Okla.)

---

**ORDER GRANTING**
**REHEARING EN BANC**

---

Before **BRISCOE,** Chief Judge, and **KELLY, LUCERO, MURPHY, HARTZ, O'BRIEN, TYMKOVICH, GORSUCH, HOLMES,** and **MATHESON,** Circuit Judges.

---

Today, the court issued Order & Judgments in numbers 09-1386, <u>United States v. Sturm</u>, and 09-5022, <u>United States v. Dayton</u>.  Those decisions were issued

simultaneously.  The appeals present a common and important issue, and the court has determined that for purposes of consistency the matters should be reheard by the entire *en banc* court.  Accordingly, we *sua sponte* order *en banc* rehearing in both these appeals, and vacate both decisions.  The parties are directed to brief the following issue:

> Whether the jurisdictional element of 18 U.S.C. §§ 2252 and 2252A requires proof that the particular image of child pornography that is the identified object of the defendant's statutorily proscribed possession, receipt, or distribution traveled in interstate or foreign commerce, or whether it is sufficient to establish the jurisdictional element to show that the original or some other iteration of that image traveled in interstate or foreign commerce at some point prior to the defendant's alleged commission of the charged crime?  In other words, does the term "visual depiction," as employed in 18 U.S.C. §§ 2252 and 2252A, refer specifically to the particular image possessed, received, or distributed by the defendant, or does it instead refer to the substance of an image of child pornography and thereby encompass not only the particular image possessed, received, or distributed by the defendant, but also any prior generations of that image, including the original?

Each separate party may file a brief on the issue identified above, but we urge counsel on the same sides to coordinate their arguments to reduce repetition.  The supplemental briefs should be filed electronically in the respective appeals.  That is, the parties should file their briefs in their original case numbers only.  They need not file in both case numbers.  The supplemental briefs shall be no longer than 20 pages in a 13 point font and the optional reply briefs shall be no longer than 10 pages in a 13 point font.

The appellants shall file their supplemental briefs on or before May 25, 2011.  The appellees shall file their response briefs within 30 days of those submissions.  The

appellants may file optional reply briefs within 14 days of service of the government's briefs.

Entered for the Court
ELISABETH A. SHUMAKER
Clerk of Court

by:    Douglas E. Cressler
Chief Deputy Clerk

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | No. 09-1386 |
| v. | (D. Colorado) |
| KENNETH DEAN STURM, | (D.C. No. 1:06-CR-00342-LTB-1) |
| Defendant - Appellant. | |

---

## ORDER AND JUDGMENT[*]

---

Before **MURPHY**, **BALDOCK**, and **BRORBY**, Circuit Judges.

---

## I.    INTRODUCTION

Kenneth Dean Sturm seeks reversal of his convictions under 18 U.S.C.
§ 2252A(a)(5)(B) and (a)(2)(B) for both possession and receipt of child pornography.
Sturm challenges certain jury instructions and the admission, pursuant to Fed. R. Evid.
414, of his prior conviction for a similar offense.  Sturm also contends his convictions for
both "possession" and "receipt" of child pornography violate the Double Jeopardy Clause
of the United States Constitution.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court holds as follows:

---

[*]     This order and judgment is not binding precedent except under the doctrines of law
of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

(1) it is not necessary to show an intent to distribute to support a conviction under 18 U.S.C. § 2252A(a)(2)(B) for "knowing receipt" of child pornography; (2) a prior state-law conviction may constitute an "offense of child molestation" admissible under Fed. R. Evid. 414(d)(2) notwithstanding the absence of a connection to interstate commerce; and (3) the Double Jeopardy Clause does not prohibit convictions for both possession and receipt of child pornography where separate and distinct conduct supports each charge. For these reasons, this court **AFFIRMS** Sturm's convictions.

## II.    BACKGROUND

Immigration and Customs Enforcement agents first became aware of Sturm during an investigation into a child pornography website. Search warrants executed on the website's servers revealed Sturm had paid $79.99 for a one-month subscription and used that subscription to access approximately 6500 images. Based on this information, a warrant to search Sturm's home was obtained and executed. This warrant ultimately led to the discovery of numerous images of child pornography on a hard drive in Sturm's possession.

The government obtained an indictment charging Sturm with (1) knowing possession of three specific images of child pornography between January 1, 2005, and May 5, 2006, in violation of 18 U.S.C. § 2252A(a)(5)(B); and (2) knowing receipt of materials containing images of child pornography on June 8, 2005, in violation of 18 U.S.C. § 2252A(a)(2)(B). At trial, Sturm did not dispute he had searched for and viewed

child pornography on the internet.  At the time, such conduct was not a federal crime.[1]

Instead, Sturm sought to highlight weaknesses in the government's proof of the interstate

commerce aspect of the charges, and its proof that he had knowingly downloaded the

images of child pornography found on his computer.  Following a nine-day trial, the jury

returned guilty verdicts on both counts.

## III.  DISCUSSION

Sturm appeals his convictions on three primary grounds: the propriety of certain

jury instructions, the admission of his prior Ohio conviction, and a Double Jeopardy

Clause challenge to his convictions for both possession and receipt of child pornography.

### A.  Jury Instructions

#### 1.  *Possession & Receipt*

In enacting § 2252A, Congress made it a crime both to knowingly receive child

pornography and to knowingly possess child pornography.  The statute provides:

(a)     Any person who — . . .

    (1)     knowingly mails, or transports or ships . . . including by computer,
            any child pornography;

    (2)     knowingly *receives* or distributes — . . .

        (B)     any material that contains child pornography that has been
                mailed, or shipped or transported in interstate or foreign
                commerce by any means, including by computer; . . .

    (3)     knowingly —

        (A)     reproduces any child pornography for distribution . . .; or

---

[1]     Section 2252A(a)(5) has since been amended.  *See* 18 U.S.C. § 2252A(a)(5); Pub.
L. No. 110-358, Title II, § 203(b), 122 Stat. 4003 (criminalizing the knowing access of
child pornography with an intent to view).

-3-

(B)    advertises, promotes, presents, distributes, or solicits . . . any [child pornography]

(4)    either — . . .
(B)    knowingly sells or possesses with the intent to sell any child pornography . . .;

(5)    either — . . .
(B)    knowingly *possesses* any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce by any means, including by computer; or . . .

(6)    knowingly distributes . . . to a minor [child pornography] . . .

Shall be punished as provided in subsection (b).

18 U.S.C. § 2252A(a) (2006) (emphasis added).

The words "receives" and "possesses" are not defined in the statute, and the district court gave the words their everyday meanings. *See United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221 (1952) (holding undefined terms "should be given, insofar as the language permits, a commonsensical meaning"); *United States v. Bass*, 411 F.3d 1198, 1201 (10th Cir. 2005) (noting § 2252A "does not define possession, but in interpreting the term, we are guided by its ordinary, everyday meaning" (quotation omitted)). It therefore instructed the jury that "[p]ossession as it pertains to computer images can include proof that the defendant had control over the images in that he could copy them, review them, move them, enlarge them, print them or delete them." The district court did not provide any clarification of the meaning of "receipt," but instructed that "to convict [Sturm] of Possession of Child Pornography, the government does not have to prove [that he] knowingly received Child Pornography." Finally, the district court advised the jury that "[t]he mere act of observing child pornography, without

-4-

possession or receipt, is not illegal."

Sturm contends these instructions left the jury "free to adopt its own definitions of possession and receipt," and failed to instruct the jury that it could not convict him of "receiving" child pornography simply because he searched for it and viewed it on his computer. In particular, Sturm asserts the terms "receive" and "possess" are indistinguishably similar in their common usage. To differentiate the two, he unsuccessfully proposed a jury instruction that "'receive' means to acquire or obtain possession of material . . . with intent to distribute those images." While § 2252A(a)(2) does not expressly include an intent to distribute requirement, Sturm asserts that a scrivener's error is to blame. Sturm notes that violations of § 2252A(a)(1), (2), (3), (4), and (6) each involve, *inter alia*, distribution of child pornography and carry mandatory minimum sentences of five years and maximum sentences of twenty years. *See* 18 U.S.C. § 2252A(b)(1). A violation of § 2252A(a)(5), however, does not involve distribution, carries no mandatory minimum sentence, and has a maximum sentence of ten years. *See id.* § 2252A(b)(2). Sturm argues this difference suggests Congress meant to interdict receipt only with intent to distribute, thereby distinguishing receipt from possession.

Sturm claims that prior versions of § 2252A provide additional support for his "scrivener's error" theory. Congress first criminalized the receipt of child pornography in the Protection of Children Against Sexual Exploitation Act of 1977, which forbade the "knowing[] recei[pt] *for the purpose of sale or distribution for sale*" of child pornography. Pub. L. No. 95-225, § 2252(a)(2), 92 Stat. 8 (emphasis added). The

italicized language was removed from the statute by the Child Protection Act of 1984, Pub. L. No. 98-292, 98 Stat. 204, based upon Congress's determination that "much if not most child pornography material is distributed through an underground network of pedophiles who exchange the material on a non-commercial basis, and thus no sale is involved." H.R. Rep. 99-910, at 4 (1986). Sturm argues this history reflects Congress's intention to eliminate only the commercial purpose requirement (i.e. "for sale") from the statute, and the simultaneous elimination of the intent-to-distribute language was accidental.

This court reviews issues of statutory construction de novo. *Been v. O.K. Indus.*, 495 F.3d 1217, 1227 (10th Cir. 2007). In so doing, "we begin with the language employed by Congress, and we read the words of the statute in their context and with a view to their place in the overall statutory scheme." *Id.* (quotation omitted). Courts must "ordinarily resist reading words or elements into a statute that do not appear on its face." *Bates v. United States*, 522 U.S. 23, 29 (1997) (declining to read an "intent to defraud" requirement into 20 U.S.C. § 1097(a)). Sturm's theory, however, would require exactly that, i.e., addition of the phrase "with intent to distribute" to § 2252A(a)(2).

There is no cause to depart from the general rule in this case. First, "where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Id.* at 29-30 (quotation omitted). With this principle in mind, we note Congress has prohibited the knowing reproduction of child

pornography "for distribution" in § 2252A(a)(3), and § 2252A(a)(4) prohibits the possession of child pornography "with intent to sell." The absence of any "intent to distribute" requirement from § 2252A(a)(2) is therefore presumed intentional.

That mere receipt of child pornography is punished harshly is also consistent with Congress's view that such conduct is as culpable as production and distribution. In 1996, Congress enacted § 2252A and provided separate criminal prohibitions on receipt and possession of child pornography. In doing so, it made findings about the harms flowing from such materials. *See* Pub. L. No. 104-208, Div. A., Title I, § 101(a), 110 Stat. 3009-26. First, Congress recognized the harm inflicted upon children used in creating such pornography:

> (1)    the use of children in the production of sexually explicit material . . . is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved;

> (2)    where children are used in its production, child pornography permanently records the victim's abuse, and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years.

*Id.* Violations of § 2252A involving distribution were thus punished harshly. The creation and distribution of child pornography, however, is dependent on a market for such images. A person who receives these images "furthers the market . . . *whether or not* the person retains them. Indeed, even a person who receives the images and never gets around to viewing them still causes these harms." *United States v. Davenport*, 519 F.3d 940, 949 (9th Cir. 2008) (Graber, J., dissenting); *see also United States. v. Ellison*,

113 F.3d 77, 81 (7th Cir. 1997) (noting that "even the receipt of [child pornography] for personal use, without more, keeps producers and distributors of this filth in business"). As a consequence, it is not remarkable that receipt of child pornography carries sanctions similar to those imposed upon distribution offenses.

Congress identified a different and distinct set of harms flowing from the "possession" of child pornography:

(3)     child pornography is often used as part of a method of seducing other children into sexual activity; a child who is reluctant to engage in sexual activity with an adult, or to pose for sexually explicit photographs, can sometimes be convinced by viewing depictions of other children "having fun" participating in such activity;

(4)     child pornography is often used by pedophiles and child sexual abusers to stimulate and whet their own sexual appetites, and as a model for sexual acting out with children; such use of child pornography can desensitize the viewer to the pathology of sexual abuse or exploitation of children, so that it can become acceptable to and even preferred by the viewer.

Pub. L. No. 104-208, Div. A., Title I, § 101(a), 110 Stat. 3009-26.  Because the harms flowing from possession of child pornography differ from those associated with distribution and receipt, differentiating levels of punishment should not be unexpected. Moreover, the nature of knowing receipt and knowing possession of child pornography further distinguishes the two.  It is possible to unwittingly receive child pornography and then knowingly continue in possession of it; likewise, one can knowingly receive child pornography and then cease possession.  *See* 18 U.S.C. § 2252A(d) (making it an affirmative defense to a charge of possession of child pornography that the defendant

possessed less than three images and promptly destroyed such images or reported them to a law enforcement agency). For these reasons, consistent with other circuits, we hold that an intent to distribute is not required for a receipt-based conviction under § 2252A(a)(2). *See United States v. Olander*, 572 F.3d 764, 770 (9th Cir. 2009), *cert. denied*, 130 S. Ct. 1113 (2010); *United States v. Irving*, 554 F.3d 64, 74 (2d Cir. 2009); *United States v. Watzman*, 486 F.3d 1004, 1009-10 (7th Cir. 2007), *cert. denied*, 552 U.S. 1052 (2007). As a consequence, the district court properly rejected Sturm's proposed instruction and the instructions as a whole accurately state the applicable law.

### 2. *Theory of the Defense*

Sturm's primary defense at trial was that he had not knowingly possessed or received child pornography even though he had searched for and viewed such materials. At the time of the indictment, seeking and viewing child pornography, without more, did not constitute a violation of § 2252A.[2] At Sturm's request, the district court provided an instruction highlighting the theory of the defense: "the mere act of observing child pornography, without possession or receipt, is not illegal." Sturm now contends, for the first time, that the district court's failure to provide an instruction defining the term "receives" rendered the foregoing instruction ineffective. He elaborates that, because of the ambiguity surrounding the term "receives," the jury might have concluded that searching for and viewing child pornography on the internet constituted receipt and was

---

[2]    *See supra* note 1.

illegal.  Sturm therefore argues he was entitled to an instruction informing the jury that "searching for child pornography and looking at it was not a crime."

Sturm did not object to the theory of defense instruction given at trial, and proffered the challenged instruction himself.  His attack on the sufficiency of this instruction is therefore barred by the invited-error doctrine, which precludes a party from arguing that the district court erred in adopting a proposition that the party had urged the district court to adopt.  *See, e.g., United States v. Visinaiz*, 428 F.3d 1300, 1310-11 (10th Cir. 2005) (stating that because defense counsel had proffered the allegedly erroneous instruction, "a challenge thereto is precluded as invited error").

We likewise reject Sturm's contention that the jury was not properly instructed as to the application of the scienter requirement of § 2252A(a)(2).  The jury was instructed that conviction for knowing receipt of child pornography required proof that "on or about June 8, 2005, [Sturm] knowingly received . . . material that contained an image or images of child pornography" and that Sturm "knew that the image or images contained or constituted child pornography."  The jury was told the term "knowingly" meant Sturm "was conscious and aware of his actions, realized what he was doing or what was happening around him, and did not act because of ignorance, mistake, or accident."  Sturm now argues, for the first time, that these instructions were deficient because they failed to specify that conviction required proof Sturm knew the materials contained child pornography *before* he received them.

This court reviews a jury instruction de novo when an objection has been made at

trial, and for plain error when no objection has been made. *United States v. Fabiano*, 169 F.3d 1299, 1302 (10th Cir. 1999). Because Sturm did not raise his scienter argument below, review is for plain error. Under this standard, Sturm must show an error, that is plain, and that affected his substantial rights. *Id.* at 1303. If these three requirements are met, this court can exercise its discretion to correct the error if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotation omitted).

The challenged instructions are not erroneous. They comport with the requirements set forth by the Supreme Court in *United States v. X-Citement Video, Inc.*, because they specify that the term "knowingly" applies to both the receipt component and the "contains child pornography" component. 513 U.S. 64, 78 (1994). The instructions further specify that Sturm's guilt could not rest upon his unwitting, accidental or mistaken receipt of the child pornography. Nowhere do the instructions suggest that after-acquired knowledge of the content of the materials would be sufficient to convict Sturm under § 2252A(a)(2), and we harbor no doubt that the jury was fairly guided in its deliberations. Indeed, the jury instructions closely resemble those upheld against a similar challenge in *Fabiano*. *See* 169 F.3d at 1304-05.

3.     *Interstate Commerce*

Sturm next challenges the district court's instructions regarding the interstate commerce aspect of the charges. The jury was instructed the government "must prove beyond a reasonable doubt" that the "visual depiction, at any time, traveled or moved between any place in a state and any place outside of that state, or from any place in one

country and any place outside of that country." In accordance with this court's extant precedent, the district court further advised the jury that "it is not enough for the government to prove only that the image was viewed from the Internet." *United States v. Schaefer*, 501 F.3d 1197, 1205 (10th Cir. 2007).[3] Consistent with his objections in the district court, Sturm asserts that these instructions erroneously failed to clarify the government must prove that the *specific image* at issue moved between states, and that the district court erred in refusing to provide an instruction to that effect. Our review of the instruction given is de novo, *Fabiano*, 169 F.3d at 1303, and the district court's refusal to provide Sturm's tendered interstate commerce instruction is reviewed for abuse of discretion. *See Kokins v. Teleflex, Inc.*, 621 F.3d 1290, 1294 (10th Cir. 2010).

Sturm's "specific image" argument appears to be that § 2252A requires state lines to have been crossed not by the child pornography, but rather by the digital file in which it is contained. This interpretation finds no support in the statute. Conviction under § 2252A(a)(2)(B) requires proof Sturm knowingly received "any material that contains child pornography that has been mailed, or shipped or transported in interstate or foreign commerce." Conviction under § 2252A(a)(5)(B) requires proof Sturm knowingly possessed materials containing "an image of child pornography that has been mailed, or shipped or transported in interstate or foreign commerce." In both cases, any

---

[3]     Congress has since rejected the rule set forth in *Schaefer* by amending § 2252A to clarify that proof images of child pornography had been obtained via the internet may suffice to establish the required interstate commerce connection. *See United States v. Swenson*, 335 F. App'x 751, 753 (10th Cir. 2009) (acknowledging amendment).

commonsense reading of the statute requires that the image of child pornography—and not the digital file—travel in interstate commerce. Sturm has cited no case law to the contrary, and we have found none. Instead, this court has previously held that conviction under § 2252A requires proof the "visual images" found in a defendant's possession moved across state lines. *See Schaefer*, 501 F.3d at 1205. We consequently see no error in the district court's instructions regarding the interstate commerce requirement.

B.     Evidence of Sturm's Prior Conviction

In 2003, Sturm pleaded guilty to, and was convicted of, pandering sexually oriented matter involving a minor, in violation of Ohio Rev. Code § 2907.322(A)(5). The Ohio statute provides that

> [n]o person, with knowledge of the character of the material or performance involved, shall . . . [k]nowingly solicit, receive, purchase, exchange, or control any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality.

The government indicated its intention to use this prior conviction as evidence of Sturm's propensity to commit the crimes charged. The district court determined Sturm's prior conviction was admissible under Federal Rule of Evidence 414, and that its probative value was not substantially outweighed by the risk of unfair prejudice. *United States v. Sturm*, 590 F. Supp. 2d 1321, 1329-30 (D. Colo. 2008). Sturm appeals the district court's decision on several grounds.

1.     *Admissibility under Rule 414*

The rules of evidence generally prohibit "the admission of evidence for the

-13-

purpose of showing a defendant's propensity to commit bad acts." *United States v. Benally*, 500 F.3d 1085, 1089 (10th Cir. 2007); *see* Fed. R. Evid. 404(b). Rule 414, however, provides an exception to this general rule, whereby:

> [i]n a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant.

Fed. R. Evid. 414(a). For a prior conviction to be admissible under Rule 414, the trial court must determine that: (i) the defendant is accused of an offense of child molestation, (ii) the evidence proffered is evidence of the defendant's commission of another offense of child molestation, and (iii) the evidence is relevant. *See Benally*, 500 F.3d at 1090. The district court concluded each of these requirements had been met. *See Sturm*, 590 F. Supp. 2d at 1326-29. Sturm challenges only the district court's resolution of the second prong.

Rule 414 defines "offense of child molestation," in part, to mean a "crime under Federal law or the laws of a State . . . that involved . . . any conduct proscribed by chapter 110 of title 18, United States Code." Fed. R. Evid. 414(d)(2). Relying on this aspect of the definition, the district court determined the conduct underlying Sturm's Ohio conviction for Pandering Sexually Orientated Matter Involving a Minor was an "offense of child molestation" because such conduct also constituted knowing possession of child pornography under 18 U.S.C. § 2252A(a)(5). *Sturm*, 590 F. Supp. 2d at 1326-27. Sturm challenges this determination on the ground that his conviction under the Ohio pandering

statute did not involve "conduct proscribed by chapter 110 of title 18."

He first contends that, unlike the federal statute, the Ohio statute contains no requirement that the child pornography travel in interstate commerce. The district court, however, concluded the interstate commerce requirement of § 2252A was "purely a prerequisite for federal jurisdiction [rather than] 'conduct' for the purpose of establishing whether a state criminal conviction is an offense of child molestation pursuant to Fed. R. Evid. 414." *Sturm*, 590 F. Supp. 2d at 1326. Because the determination of this issue turns on an interpretation of the Federal Rules of Evidence, this court reviews de novo. *See United States v. Batton*, 602 F.3d 1191, 1196 (10th Cir. 2010).

The district court's conclusion comports with precedent and common sense. This court has previously referred to the interstate commerce requirements of § 2252A as a "jurisdictional prong." *See, e.g., United States v. Schene*, 543 F.3d 627, 636-37 (10th Cir. 2008); *Schaefer*, 501 F.3d at 1200; *see generally X-Citement Video*, 513 U.S. 64, 78 (extending the "knowingly" scienter requirement to the age of performers and sexually explicit nature of the material, but not to the interstate commerce requirement). More importantly, Congress has authorized the use of prior crimes in child molestation cases because "a history of similar acts tends to be exceptionally probative . . . [of] an unusual disposition of the defendant—a sexual or sado-sexual interest in children—that simply does not exist in ordinary people." 140 Cong. Rec. H8968-01, H8991 (daily ed. Aug. 21, 1994) (statement of Rep. Molinari). With the purpose of Rule 414 evidence so conceived, the interstate character of a defendant's prior crimes has no bearing on the

evidence's probative value.

Rule 414 defines "offense of child molestation" to include crimes under state law involving conduct prohibited by chapter 110 of title 18. It would be unusual for a state criminal statute to contain an interstate commerce requirement. Adoption of the construction Sturm urges, then, would effectively gut the Rule of much of its reach for no discernable reason. Nothing in the Rule or legislative history indicates that Congress considered the interstate aspect of child pornography crimes to be relevant in this context, and Rule 414(d)(3) – (6) describes other conduct constituting an "offense of child molestation" that plainly requires no interstate element. Thus, conduct supporting a conviction under state law may constitute an "offense of child molestation" for Rule 414(d)(2) purposes, even though the state law offense did not involve child pornography traveling across state lines.

Sturm next contends the Ohio pandering statute under which he was convicted prohibits a broader range of activity than federal law, such that the conduct supporting his state law conviction is not necessarily proscribed by chapter 110 of title 18. Specifically, Ohio law criminalizes the knowing possession of "any material that shows a minor participating or engaging in sexual activity, masturbation or bestiality." Ohio Rev. Code § 2907.322(A)(5). "Sexual activity" is defined to include both "sexual conduct" or "sexual contact," with the latter term encompassing "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either

person." Ohio Rev. Code § 2907.01(B), (C). Federal law, by contrast, does not prohibit the knowing possession of images depicting children touching, for example, the thigh of another. *See* 18 U.S.C. § 2256(2), (8) (defining "child pornography"). Thus, Sturm suggests, it is possible his pandering conviction was based upon conduct not proscribed by chapter 110 of title 18, and would consequently not constitute an "offense of child molestation" as required by Rule 414.

Because this challenge was not raised in the trial court, this court reviews only for plain error. *See United States v. Penn*, 601 F.3d 1007, 1009 (10th Cir. 2010). Under plain error review, Sturm must establish the district court's admission of his prior Ohio conviction as an "offense of child molestation" under Rule 414 was (1) "error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* His challenge cannot satisfy the first or third prongs.

Had Sturm raised his current objection below, the government would have borne the burden of producing appropriate evidence to clarify the nature of Sturm's Ohio crime. He failed to do so and, consequently, neither the government nor the district court had occasion to seek production of evidence adducing the precise conduct underlying Sturm's prior conviction. The record's shortcomings in this regard prevent the court from now determining whether the Ohio conviction was properly categorized as an "offense of child molestation." As a result, Sturm has failed to show the district court erred when it admitted the Ohio conviction.

Sturm has likewise failed to satisfy the third prong of plain error review.  To satisfy this prong, Sturm must demonstrate that any error on the part of the district court affected the outcome of the proceedings.  *United States v. Zubia-Torres*, 550 F.3d 1202, 1209 (10th Cir. 2008).  In this case, Sturm has never alleged the conduct underlying his Ohio conviction would not amount to a violation of § 2252A.  Instead, he has simply asserted that because Ohio law is broader than chapter 11 of title 18, it is *possible* his conviction is not admissible under Rule 414.  Absent an assertion of actual error on the part of the district court, Sturm cannot demonstrate any effect on his substantial rights. *United States v. McBride*, No. 10-3206, 2011 WL 489681, at *3-*4 (10th Cir. Feb. 14, 2011).

Sturm's final challenge attempts to show that the Ohio statute is again broader than Rule 414 because the former defines "minor" to mean a person under the age of eighteen while the latter provides that "child" means person below the age of fourteen.  *Compare* Ohio Rev. Code § 2907.01(M), *with* Fed R. Evid. 414(d).  Thus, Sturm contends, a prior crime can only constitute an "offense of child molestation" for Rule 414 if it involved a child under the age of fourteen.  This argument is based on a gross misunderstanding of Rule 414(d)(2).  That subsection defines "offense of child molestation"—independent of the defined term "child"—to mean "a crime under Federal law or the law of a State . . . that involved . . . any conduct proscribed by chapter 110 of title 18, United States Code."  The relevant age of the children victims under this definition, then, is determined by reference to chapter 110 of title 18, which defines "minor" as any person under the age of

eighteen, precisely the same threshold as the Ohio statute. *See* 18 U.S.C. § 2256(1). The

district court thus correctly determined that Sturm's prior conviction satisfies the

prerequisites for admissibility under Rule 414.

2.    *Enjady Balancing*

Evidence of a prior offense of child molestation that satisfies Rule 414 must yet be

evaluated under Rule 403. *United States v. Meacham*, 115 F.3d 1488, 1492 (10th Cir.

1997) (holding that Rule 403 applies to Rule 414 evidence). Rule 403 permits the

exclusion of relevant evidence "if its probative value is substantially outweighed by the

danger of unfair prejudice, confusion of the issues, or misleading the jury, or by

considerations of undue delay, waste of time, or needless presentation of cumulative

evidence." Fed. R. Evid. 403. In the context of prior crimes evidence, this court employs

the following four-factor analysis under Rule 403:

1)    How clearly the prior act has been proved;
2)    How probative the evidence is of the material fact it is admitted to
       prove;
3)    How seriously disputed the material fact is; and
4)    Whether the government can avail itself of any less prejudicial
       evidence.

*United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998) (setting forth Rule 403 test

for Rule 413 evidence); *Benally*, 500 F.3d at 1090-91 (extending *Enjady* to Rule 414

evidence). The exclusion of relevant evidence under the *Enjady* test should be infrequent,

reflecting Congress's legislative judgment that evidence of similar crimes should

"normally" be admitted in child molestation cases. *Enjady*, 134 F.3d at 1433.

In balancing the probative value and prejudicial potential of Sturm's Ohio conviction, the district court concluded (1) the prior act had been clearly proved, (2) the prior act was highly probative of Sturm's propensity to receive and possess child pornography in violation of § 2252A, (3) Sturm "does not challenge the material fact of his prior conviction," and (4) it was unclear whether allowing Sturm to stipulate to his prior conviction would be less prejudicial than admission of direct evidence. *Sturm*, 590 F. Supp. 2d at 1328-29. The district court further concluded the probative value of Sturm's guilty plea and conviction was not substantially outweighed by the danger of unfair prejudice. *Id.* at 1329. Sturm now takes issue with the district court's analysis of the second, third and fourth *Enjady* factors.[4] This court reviews the district court's evidentiary rulings for abuse of discretion. *See Benally*, 500 F.3d at 1089.

The second *Enjady* factor requires "Rule 414 evidence to be probative of the material fact it is admitted to prove." *United States v. Mann*, 193 F.3d 1172, 1174 (10th Cir. 1999). The district court determined "Sturm's recent prior conviction in Ohio is highly probative of the material fact regarding his propensity to receive and possess child pornography as charged here." *Sturm*, 590 F. Supp. 2d at 1328. Sturm disputes this determination, alleging his prior conviction is probative only of his propensity "to be interested in and/or possess child pornography," rather than to commit each element of the crimes charged. Conspicuously absent from Sturm's argument, however, is any

---

[4]     Having pleaded guilty to the Ohio charges, Sturm does not dispute that the first *Enjady* factor weighs in favor of admissibility.

articulated reason why the Ohio conviction's probative value extends only so far. Rule 414 explicitly allows evidence of prior offenses of child molestation to be considered "for its bearing on *any* matter to which it is relevant." Fed. R. Evid. 414(a) (emphasis added). This includes a defendant's propensity to commit the acts charged. *See, e.g., Batton*, 602 F.3d at 1198; *Benally*, 500 F.3d at 1092. In determining that Sturm's prior conviction was relevant to his propensity to commit the crimes charged, the district court considered "the similarity of the prior acts and the charged acts," as well as "the time lapse between the other acts and the charged acts." The district court did not abuse its discretion in concluding the Ohio conviction is probative of Sturm's propensity to receive and possess child pornography as charged.

Nor did the district court abuse its discretion in its treatment of the fourth *Enjady* factor, which asks "whether the government can avail itself of any less prejudicial evidence." The government proposed that rather than admitting direct evidence of Sturm's prior conviction, a stipulation could be employed. Sturm's opposition did not propose any alternative, less prejudicial evidence. The district court offered Sturm the option of choosing between the stipulation and direct evidence of conviction, and Sturm declined. *See Sturm*, 590 F. Supp. 2d at 1329-30.

Repeating his contention that the prior conviction is probative only of his interest in child pornography, Sturm now contends the government could have availed itself of "a plethora" of other evidence, including his paid subscription to a child-pornography website and the thousands of images of child pornography he viewed through it. The

government, however, presented the prior conviction for the more focused purpose of demonstrating Sturm's propensity to knowingly commit all elements of the crimes charged. The only evidence of such propensity proposed to the district court was the direct evidence of Sturm's prior conviction and a stipulation to the facts thereof. The district court's analysis was therefore proper.

The district court's treatment of the third *Enjady* factor presents complications. The third factor requires the district court to "evaluate the seriousness of the dispute over the material fact the Rule 414 evidence is admitted to prove." *Mann*, 193 F.3d at 1174. The more seriously disputed the material fact, the more heavily this factor weighs in favor of admissibility. *See, e.g., Batton*, 602 F.3d at 1198 ("Batton claimed at trial that he did none of the acts of which J.D. accused him, making the 1995 conviction a crucial piece of evidence to help the jury . . . ."). As discussed above, the government proffered the prior conviction to prove the material fact of Sturm's "propensity to receive and possess child pornography as charged here." *Sturm*, 590 F.Supp. 2d. at 1328. Applied to the present case, the third *Enjady* factor thus asks "how seriously disputed is Sturm's propensity to knowingly receive and possess child pornography as charged?" Sturm vigorously denied having any such propensity, and this consequently weighs in favor of admitting the prior conviction. The district court, however, inquired whether the parties seriously disputed the propriety of Sturm's prior conviction. *Id.* at 1329. Concluding that "Sturm's guilty plea and conviction in Ohio is not disputed at all," the district court determined the third factor weighed in favor of admission. The district court therefore misconceived the

question posed by the third *Enjady* factor.

This analytical misstep does not rise to the level of an abuse of discretion. Under the applicable standard of review, we may not reverse the district court's evidentiary ruling if "it falls within the bounds of permissible choice in the circumstances and is not arbitrary, capricious or whimsical." *United States v. Smith*, 534 F.3d 1211, 1218 (10th Cir. 2008). This court may, moreover, uphold a district court's evidentiary rulings on any ground supported by the record. *See Enjady*, 134 F.3d at 1434. As discussed above, each of the *Enjady* factors weighs in favor of admission of Sturm's prior conviction. The district court was therefore correct when it concluded "the probative value of the evidence of [Sturm's] prior guilty plea and conviction, under Ohio law, for receipt or possession of child pornography is not substantially outweighed by the danger of unfair prejudice." *Sturm*, 590 F. Supp. 2d at 1329. Because the district court's decision to admit the evidence constitutes a permissible choice in the circumstances, this court affirms.

### 3. *Cautionary Instruction*

After determining Sturm's prior conviction was admissible, the district court offered to provide a cautionary instruction to the jury regarding this evidence. *Sturm*, 590 F. Supp. 2d at 1330. In Instruction No. 14, the jury was ultimately instructed as follows:

> You have been presented with evidence that, in 2003, the defendant was convicted of "Pandering Sexually Oriented Matter Involving a Minor." This case was from Ohio and in Ohio "pandering" means possession. *You may consider this evidence for [its] bearing on any matter to which it is relevant, including propensity to commit the crimes charged . . . .* You should consider this evidence just as you consider other evidence in this trial, giving it as much weight as you think it deserves.

-23-

(emphasis added).  Sturm objected to the inclusion of the italicized language and contends that the instruction improperly emphasized the most prejudicial possible use of the Rule 414 evidence.

Evaluating Instruction No. 14 in context, the district court did not abuse its discretion.  As discussed above, Rule 414 evidence may be considered for its bearing on any matter to which it is relevant, including the defendant's "propensity to commit . . . child molestation offenses, and assessment of the probability or improbability that the defendant has been falsely or mistakenly accused of such an offense."  140 Cong. Rec. H8968-01, H8991 (daily ed. Aug. 21, 1994) (statement of Rep. Molinari).  The instruction therefore did not misstate the possible uses of the Rule 414 evidence available to the jury.  *See United States v. McHorse*, 179 F.3d 889, 903 (10th Cir. 1999) ("Rule 414(a) displaces Fed. R. Evid. 404(b)'s restriction on propensity evidence and allows the government to offer evidence of a defendant's prior sexual misconduct for the purpose of demonstrating the defendant's propensity to commit the charged offense.").

Nor did Instruction No. 14 improperly emphasize these permissible uses.  It instead clarified for the jury the difference between the Rule 414 evidence and other "prior acts" evidence, which are barred from use as propensity evidence under Rule 404(b).  Even assuming that confusion might arise from Instruction No. 14 when considered in isolation, that possibility was eliminated by other instructions.  In Instruction No. 13, for example, the district court advised the jury that "the fact that the defendant may have previously committed an act similar to the one charged in this case

does not mean that the defendant necessarily committed the act charged in this case."
The jury was also instructed that "[t]he defendant is not on trial for any act, conduct, or
crime not charged in the indictment," and was repeatedly reminded that the government
bears the burden of proving each element of the charged offenses. These clarifying
instructions remove any possible concern that the jury was improperly instructed. *See
Batton*, 602 F.3d at 1199-1200 (upholding similar propensity evidence instructions
tempered by additional, clarifying instructions).

     C.    <u>Double Jeopardy</u>

Mr. Sturm's final argument on appeal is that his conviction for both knowing
possession and knowing receipt of child pornography violated his rights under the Fifth
Amendment's Double Jeopardy Clause. The Double Jeopardy Clause protects a
defendant against "cumulative punishments for convictions on the same offense." *Ohio v.
Johnson*, 467 U.S. 493, 500 (1984). The long-standing touchstone of double jeopardy
jurisprudence is that "where the same act or transaction constitutes a violation of two
distinct statutory provisions, the test to be applied to determine whether there are two
offenses or only one, is whether each provision requires proof of a fact which the other
does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Reasoning that an
individual who receives child pornography necessarily possesses it, Sturm contends that
knowing possession under § 2252A(a)(5)(B) is a lesser included offense of knowing
receipt under § 2252A(a)(2), and that his conviction under both statutes for one act cannot
stand.

Sturm's argument rests on the mistaken premise that the same criminal conduct supports both of his convictions. Sturm was accused of two distinct sets of conduct: Count One of the indictment charged him with knowing possessing of three specific images of child pornography between January 1, 2005, and May 5, 2006; Count Two charged him with knowing receipt of child pornography on June 8, 2005. The evidence at trial established Sturm knowingly possessed digital images of pornography entitled "26.bmp," "8.bmprwet.bmp," and "1.bmpwrt.bmp.," and knowingly received digital images of pornography entitled "14[1].jpg," "14.jpg," "14c.jpg," and 14cvj.jpg." The jury was specifically instructed as to which images were associated with which count, and found Sturm guilty on both counts. Thus, Sturm's convictions and sentences were based on two distinct acts, occurring on two different dates, and proscribed by two different statutes. Under such circumstances, the Double Jeopardy Clause is not implicated.[5]

Sturm seeks to avoid this conclusion by urging the court to ignore the discrete and independent instances of criminal conduct identified by the government, and to instead lump them together as a single, on-going act. He argues such an approach makes sense because § 2252A(a) forbids the knowing receipt or possession of "*any* child pornography" or "*any* material that contains child pornography," and because all of the child pornography at issue here was found on a single hard drive in his possession. This

_____

[5]    This court expresses no opinion on the question whether § 2252A(a)(5) is a lesser-included offense of §2252A(a)(2). *Compare Davenport*, 519 F.3d at 944 (holding § 2252A(5) to be lesser included offense of § 2252A(a)(2)), *with id.* at 948-52 (Graber, J., dissenting).

court declines to engage in such tortured logic because the statutory ambiguity Sturm's argument relies upon does not extend to the verbs "receives" and "possesses." While the simultaneous receipt of multiple images of pornography may arguably constitute but one offense under § 2252A, multiple discrete instances of *receipt* plainly result in multiple criminal offenses. The government proved beyond a reasonable doubt several unique incidents of knowing possession and receipt by Sturm, and his decision to store all such materials on a single hard drive is of no significance.

IV.     **CONCLUSION**

For the foregoing reasons, Mr. Sturm's conviction is AFFIRMED.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge